# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| REBECCA JO BRITT, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 07-CV-519-SAJ |
| | ) |
| MICHAEL J. ASTRUE, | ) |
| Commissioner of the Social Security | ) |
| Administration, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER[1]

Pursuant to 42 U.S.C. § 405(g), Plaintiff appeals the decision of the Commissioner denying supplemental security income benefits under Title XVI of the Social Security Act. Plaintiff asserts that (1) the ALJ failed to properly assess Plaintiff's residual functional capacity ("RFC"); and (2) the ALJ failed to properly evaluate Plaintiff's credibility. For the reasons set forth below, the Court reverses and remands the Commissioner's decision for further proceedings consistent with this opinion.

## 1. FACTUAL AND PROCEDURAL HISTORY

Plaintiff, Rebecca Jo Britt, was born on October 10, 1960 and was 46 at the time of the hearing. [R. 291]. She has attended college classes. [R. 65, 291]. Her past relevant work includes that of a prep cook, painter's helper, production assembler, cashier, custodian, garbage collector, and telephone solicitor. [R. 63, 295-96]. She alleges that she has been disabled since August 16, 2003, due to hepatitis C, which was diagnosed in 1998.

---

[1] This Order is entered in accordance with 28 U.S.C. § 636(c) and pursuant to the parties' Consent to Proceed Before United States Magistrate Judge.

1

[R. 117-19]. In September 2003, Plaintiff was initially hospitalized for a kidney infection but then further diagnosed with acute renal insufficiency. An echocardiogram performed on October 1, 2003, revealed a diminished ejection fraction of 10 to 15 per cent, with severe tricuspid mitral regurgitation. Plaintiff was diagnosed with cardiomyopathy[2] with severe left ventricular dysfunction, congestive heart failure, valvular heart disease, and severe pulmonary hypertension. Hospital physicians noted that Plaintiff complained of shortness of breath and fatigue. [R. 122-25].

An echocardiogram performed on July 31, 2006, revealed normal left ventricular function and an estimated ejection fraction of 65 per cent. The right atrium was mildly dilated. Plaintiff had moderate to moderately severe tricuspid regurgitation, and moderate pulmonary hypertension. On examination, Dr. Alan Kaneshige noted 2+ edema on the left leg, and 1+ edema on the right leg, which he attributed to her cardiomyopathy. [R. 258-61].

Plaintiff protectively filed an application for supplemental security income benefits on August 18, 2004. [R. 48-50]. The Commissioner initially denied her application on December 10, 2004, [R. 33A-36] and, on reconsideration, denied it again on September 13, 2005. [R. 39-41]. She then filed a Request for Hearing Before an ALJ on November 14, 2005, [R. 42] and ALJ John Volz held a hearing on November 6, 2006. [*See* R. 266-297]. On November 22, 2006, ALJ Volz concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, from August 18, 2004, through the date of his decision. [R. 21]. Plaintiff then filed a Request for Review of Hearing Decision on December 15, 2006, [R. 11] and the Appeals Council denied her request on August 13,

---

[2]Cardiomyopathy is a "disease of the myocardium, the muscular wall of the heart." 1 Schmidt, J.E. *Attorney's Dictionary of Medicine* C-81 (Lexis/Nexis 2007).

2007. [R. 5-7]. Plaintiff now seeks judicial review.

## 2. SOCIAL SECURITY LAW AND STANDARD OF REVIEW

The Commissioner has established a five-step process for the evaluation of social security claims. *See* 20 C.F.R. § 416.920. Disability under the Social Security Act is defined as the

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . . .

42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act only if his

> physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work in the national economy. . . .

42 U.S.C. § 423(d)(2)(A).[3]

The Commissioner's disability determinations are reviewed to determine (1) if the correct legal principles have been followed, and (2) if the decision is supported by

---

[3] Step One requires the claimant to establish that she is not engaged in substantial gainful activity (as defined at 20 C.F.R. §§ 416.910 and 416.972). Step Two requires that the claimant demonstrate that she has a medically severe impairment or combination of impairments that significantly limit her ability to do basic work activities. *See* 20 C.F.R. § 416.921. If claimant is engaged in substantial gainful activity (Step One) or if claimant's impairment is not medically severe (Step Two), disability benefits are denied. At Step Three, the claimant's impairment is compared with those impairments listed at 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "Listings"). If a claimant's impairment is equal or medically equivalent to an impairment in the Listings, the claimant is presumed disabled. If a Listing is not met, the evaluation proceeds to Step Four, where the claimant must establish that her impairment or the combination of impairments prevents her from performing her past relevant work. A claimant is not disabled if the claimant can perform her past work. If the claimant is unable to perform her previous work, the Commissioner has the burden of proof (Step Five) to establish that the claimant, in light of her age, education, and work history, has the residual functional capacity ("RFC") to perform an alternative work activity in the national economy. If a claimant has the RFC to perform an alternate work activity, disability benefits are denied. *See Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); *Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

substantial evidence. *See* 42 U.S.C. § 405(g); *Bernal v. Bowen*, 851 F.2d 297, 299 (10th Cir. 1988); *Williams v. Bowen*, 844 F.2d 748, 750 (10th Cir. 1988).

The Court, in determining whether the decision of the Commissioner is supported by substantial evidence, does not examine the issues *de novo*. *Sisco v. United States Dept. of Health and Human Services*, 10 F.3d 739, 741 (10th Cir. 1993). The Court will "neither reweigh the evidence nor substitute its judgment for that of the Commissioner." *Qualls v. Apfel*, 206 F.3d 1368, 1371 (10th Cir. 2000); *see Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994). The Court will, however, meticulously examine the entire record to determine if the Commissioner's determination is rational. *Williams*, 844 F.2d at 750; *Holloway v. Heckler*, 607 F. Supp. 71, 72 (D. Kan. 1985).

"The finding of the Secretary[4] as to any fact, if supported by substantial evidence, shall be conclusive, . . ." 42 U.S.C. § 405(g). Substantial evidence is that amount and type of evidence that a reasonable mind will accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Williams*, 844 F.2d at 750. In terms of traditional burdens of proof, substantial evidence is more than a scintilla, but less than a preponderance. *Perales*, 402 U.S. at 401. Evidence is not substantial if it is overwhelmed by other evidence in the record. *Williams*, 844 F.2d at 750.

This Court must also determine whether the Commissioner applied the correct legal standards. *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994). The Commissioner's decision will be reversed when he uses the wrong legal standard or fails

---

[4] Effective March 31, 1995, the functions of the Secretary of Health and Human Services ("Secretary") in social security cases were transferred to the Commissioner of Social Security. P.L No. 103-296. For the purposes of this Order, references in case law to "the Secretary" are interchangeable with "the Commissioner".

to clearly demonstrate reliance on the correct legal standards. *Glass*, 43 F.3d at 1395.

### 3. ADMINISTRATIVE LAW JUDGE'S DECISION

In his decision, the ALJ determined that (1)Plaintiff had not engaged in substantial gainful activity at any time relevant to his decision; (2) Plaintiff's impairments, which consist of cardiomyopathy and hepatitis C, are "severe"; (3) Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) Plaintiff has the residual functional capacity for sedentary work; and (5) Plaintiff is capable of performing her past relevant work as a telemarketer, as the vocational expert identified that job as sedentary and that job does not require the performance of work-related activities precluded by Plaintiff's residual functional capacity. [R. 19-21]. Accordingly, the ALJ concluded that Plaintiff had not been under a disability, as defined by the Social Security Act, at any time from August 18, 2004, through the date of his decision. *Id.*

### 4. REVIEW

#### A. The ALJ's Residual Functional Capacity Assessment

Plaintiff contends that the ALJ erred because he failed to make a proper assessment of her residual functional capacity ("RFC"). Specifically, Plaintiff argues that the ALJ failed to consider Plaintiff's symptom of chronic fatigue, related to both her cardiomyopathy and hepatitis C, and failed to include any limitations from that symptom in his assessment of her RFC. In response, the Commissioner suggests that Plaintiff's allegations of fatigue in the record are merely Plaintiff's own subjective complaints, and "such complaints alone are not sufficient to establish that a claimant has an impairment."

[Resp. Br. Dkt. #15 at 5].

The RFC assessment is a function reserved solely to the ALJ. *See* 20 C.F.R. §§ 404.1527(e); 404.1546. The RFC is an administrative assessment based on the totality of the evidence for determining the extent to which a claimant's impairments and related symptoms impact that person's ability to perform work-related activities. *See Policy Interpretation Ruling Titles II and XVI: Assessing Residual Functional Capacity in Initial Claims*, SSR 96-8p, at *2 (S.S.A. July 2, 1996). In assessing RFC, the ALJ "must consider only limitations and restrictions attributable to medically determinable impairments." *Id*. At Step Two, the ALJ found that Plaintiff's cardiomyopathy and hepatitis C were medically determinable impairments. [R. 19]. Thus, the ALJ was then required to consider Plaintiff's statements about her fatigue as reasonably related to her cardiomyopathy and hepatitis C.[5]

At the hearing, in response to the ALJ's question of why she could not work, Plaintiff testified that she "had a lot of fatigue" and had "a hard time staying up," because she "get[s] tired." [R. 274]. The ALJ also asked Plaintiff at the hearing whether "fatigue is your main problem?" [R. 289]. Elsewhere in the record, Plaintiff consistently identified fatigue as her reason for not being able to work. In forms she completed for the Commissioner, Plaintiff stated, "I am more fatigued and have more 'bad' days," "I am easily fatigued," "now I tire easily," and "housework [is] difficult, [I] feel tired often." [R. 67, 73, 79, 106]. Physicians examining Plaintiff at the request of the Commissioner also noted her statements about her fatigue in their reports. Although Dr. Angelo Dalessandro initially indicated Plaintiff denied

---

[5]Fatigue is a recognized symptom of cardiomyopathy and hepatitis C. *See The Merck Manual* 385 (fatigue is common in chronic hepatitis), 1693(cardiomyopathy is "usually chronic, presenting with effort dyspnea and fatigue due to elevated left diastolic pressure and low cardiac output") (17th ed. 1999).

6

fatigue, he also stated that "chronic fatigue is present." [R. 206-07]. Dr. Jeri Fritz, Ph.D., noted Plaintiff's report of "congestive heart failure" and hepatitis C "which cause significant fatigue." [R. 215]. A Chouteau Family Clinic nurse, who examined Plaintiff on November 10, 2003, noted her complaints of fatigue. [R. 253]. Additionally, a Social Security Administration employee, who interviewed Plaintiff in connection for her claim for benefits, commented that Plaintiff appeared "extremely tired" and "almost nodded [off?] at my desk while talking."[6] [R. 58].

In making a determination of a claimant's physical capabilities, the ALJ should "first assess the nature and extent of [the claimant's] physical limitations and then determine [the claimant's] residual functional capacity." *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996)(internal quotations omitted). Social Security Ruling 96-8p requires the ALJ to "consider all allegations of physical and mental limitations or restrictions and make every reasonable effort to ensure that the file contains sufficient evidence to assess RFC." That Ruling further requires the ALJ to give "[c]areful consideration . . . to any available information about symptoms because subjective descriptions may indicate more severe limitations or restrictions than can be shown by medical evidence alone." *See*, S.S.R. 96-8p, 1996 WL 37184 at *5.

In his decision, however, the ALJ failed to identify any particular limitations or

---

[6] The RFC assessment must be based on all the relevant evidence in the case record, including "recorded observations" such as those by the agency employee. See, S.S.R. 96-8p,1996 WL 37184 at *5. Additionally, the ALJ should consider agency employee's recorded observations of the claimant in assessing the credibility of the claimant's statements about her symptoms. *See Policy Interpretation Ruling Titles II and XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p, 1996 WL 374186 at *8 (S.S.A. July 2, 1996).

restrictions from either of the two "severe" impairments he identified. Instead, he merely assessed Plaintiff with an RFC for sedentary work, without specifically identifying the evidence on which he based his RFC assessment. [R. 20]. Although the ALJ stated he had considered "all symptoms" and he noted an indication in the medical evidence of "chronic fatigue," as well as Plaintiff's testimony that her fatigue was one of her "main problems," the ALJ failed to explain how he considered that evidence of Plaintiff's fatigue in assessing a sedentary RFC. The Commissioner requires the ALJ to provide "a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts . . . and nonmedical evidence."[7] The ALJ's decision does not provide such a narrative, so that the Court cannot evaluate whether, and how, the ALJ considered the effects of Plaintiff's fatigue in determining Plaintiff could perform sedentary work.

Moreover, in Ruling 96-8p, the Commissioner also requires the ALJ to "discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week) and describe the maximum amount of each work-related activity the individual can perform based on the evidence available in the case record." *See* S.S.R. 96-8p, 1996 WL 374184 at *2. The ALJ failed to discuss whether Plaintiff's fatigue would cause limitations in her ability to perform both exertional and nonexertional aspects of sedentary work activity. For example, the ALJ did not indicate whether Plaintiff's fatigue could be accommodated with regular rest breaks in a competitive work setting, or whether Plaintiff would need employer accommodation for additional rest breaks. Ruling 96-8p further requires that the ALJ "[s]et forth a logical

---

[7] S.S.R. 96-8p, 1996 WL 37184 at *6.

8

explanation of the effects of the symptoms . . . on the individual's ability to work." *Id.* at *7. The ALJ provided no explanation of the effects of Plaintiff's fatigue on her ability to perform sustained work.

Ruling 96-8p permits the ALJ to consider "nonmedical evidence," such as a claimant's daily activities in assessing RFC. *Id.* at *6. In connection with his credibility determination, the ALJ noted that Plaintiff performed "household and yard chores," including "such tasks as doing laundry, washing dishes, sweeping floors, and picking up trash" and going to her counseling sessions three times a week, going to the library and grocery store, and transporting her son to and from school. [R. 21].

The Court finds Plaintiff's statements regarding her daily activities do not provide a reason to discount her allegations of fatigue. Plaintiff stated that her children helped her with household chores, laundry, washing dishes and cooking. [R. 78-79]. She estimated that "each chore takes 15 to 20" minutes, and sometimes she did not finish chores; she similarly noted that she sometimes shopped for groceries for an hour, but sometimes she couldn't go at all. [R. 80, 82]. Plaintiff also stated that she found doing "housework difficult, [I] feel tired often." [R. 106]. Plaintiff testified that, on the weekends, she drove her oldest son home, and then back to Job Corps, where he spent the week. [R. 283]. Plaintiff testified she had "bad" days, in which she felt tired, sick and stayed in bed all day, while her children fixed their own meals. She estimated she had "bad" days about three or four times a month. [R. 284-86].

The Tenth Circuit has long held that "the ALJ may not rely on minimal daily activities as substantial evidence that the claimant does not suffer disabling" symptoms, as the "sporadic performance [of household tasks or work] does not establish that a person is

capable of engaging in substantial gainful activity." *Thompson v. Sullivan*, 987 F.2d 1482, 1490 (10th Cir. 1993). "In order to engage in gainful activity, a person must be capable of performing on a reasonably regular basis" so that "[w]orking for an hour or so as a janitor in an intermittent fashion is not inconsistent with complaints of pain." *Byron v. Heckler*, 742 F.2d 1232, 1235 (10th Cir. 1984). In assessing Plaintiff's household tasks and other daily activities, the ALJ failed to develop the record on whether Plaintiff performed such activities on a regular or an intermittent basis, in order to make a supported determination of whether her fatigue would permit her to perform sustained gainful activity.

The Court finds that the ALJ's RFC assessment for sedentary work fails to demonstrate that he adequately considered Plaintiff's symptoms of fatigue in assessing her ability to perform sustained work activity. The Court therefore reverses and remands this case for the ALJ to re-evaluate Plaintiff's RFC in accordance with Social Security Ruling 96-8p. Because of its remand, the Court will not further address Plaintiff's arguments of error regarding the ALJ's credibility determination.

IT IS SO ORDERED this 6th day of October, 2008.

Sam A. Joyner
United States Magistrate Judge